**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 76 Civ. 571.**

United States District Court, S. D. New York.

April 15, 1977.

Frank L. Fuller, III, Victor S. Gomperts, New York City, for plaintiff.

Robert B. Fiske, Jr., U.S. Atty. S.D.N.Y., New York City, for the United States by Thomas E. Moseley, Asst. U.S. Atty., New York City.

OPINION

ROBERT L. CARTER, District Judge.

Plaintiff ("ATT") and defendant both move pursuant to Rule 56(a), F.R.Civ.P., for summary judgment. They have submitted a joint 9(g) statement, and there are no material issues of fact to be resolved.

*Facts*[1]

When ATT filed its 1964 federal income tax return, it claimed a foreign tax credit of $269,085.10 based on its payment of a 15% Canadian income tax of non-residents for 1964.[2] In 1966 Canada made an additional assessment of $763,272.90 Canadian dollars against ATT for 1964 under the same 15% Canadian income tax of non-residents.[3] Although contesting that assessment, ATT in January, 1967 paid Canada the taxes assessed. On that date the exchange rate was such that the value of ATT's payment was $707,859.29. ATT claimed this as an additional foreign tax credit, which claim was allowed by the IRS as an adjustment during its audit of ATT's 1964 income tax return. At this point ATT showed a foreign tax credit of $976,944.39 based on its payment in two parts of the 15% Canadian non-resident tax.

In October of 1972, the Canadian Authorities refunded to ATT $763,272.90 Canadian dollars—representing the contested tax assessment against ATT which ATT had paid in 1967. Given the exchange rate at that time, the Canadian refund was worth $777,-240.79, or $69,381.50 more than the value of ATT's payment to the Canadian authorities in 1967.

Pursuant to Section 905(c) of the Internal Revenue Code, ATT informed the IRS of this refund. The IRS thereupon redetermined ATT's federal income tax due for 1964 by deducting $777,240.79 from the $976,944.39 foreign tax credit previously claimed by ATT for 1964.

ATT contests this redetermination, arguing that the IRS should have deducted only $707,859.29[4] from ATT's previously claimed foreign tax credit. ATT therefore seeks a refund of $69,381.50 from the IRS.[5]

*Discussion*

As I view it, this case is easily determined once the facts are sorted out. Plaintiff having paid a total of $976,944.39 in taxes to Canada, claimed a foreign tax credit for the same amount on its 1964 adjusted United States income tax return. When Canada refunded $777,240.79 of the tax it had earlier collected, plaintiff's allowable 1964 foreign tax credit was reduced by the IRS by that amount. This reduction was correctly made pursuant to the applicable sections of the Code.

Section 901(b) of the Code allows a taxpayer to credit against his federal income tax the amount of any income tax paid to any foreign country. Section 905(c) provides that where there is any subsequent refund of the foreign tax on which a credit was claimed, the Secretary of the Treasury shall "redetermine the amount of the tax for the year or years affected."[6] The issue raised here is how that redetermination shall be made when between the time the

---

1. Unless specifically stated otherwise, the symbol $ shall refer to an American dollar, and not a Canadian dollar.

2. These taxes were withheld pursuant to § 109 of the Canadian Income Tax Act, and were based on dividends and interest paid ATT by Canadian companies, which are taxable under §§ 106(1)(a) and 106(1)(b) of the Canadian Income Tax Act.

3. These taxes were assessed pursuant to § 106(1)(d) of the Canadian Income Tax Act, and were based on certain fees paid ATT pursuant to a service contract with a Canadian company.

4. The dollar value of the 1966 Canadian assessment of $763,272.90 Canadian dollars calculated at the exchange rate when the original payment was made by ATT.

5. $777,240.79 − $707,859.29 = $69,381.50

6. Section 905(c) reads in pertinent part:

"(c) *Adjustments on payment of accrued taxes.*—If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Secretary or his delegate, who shall redetermine the amount of the tax for the year or years affected. The amount of tax due on such redetermination, if any, shall be paid by the taxpayer on notice and demand by the Secretary or his delegate, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with subchapter B of chapter 66 (sec. 6511 and following)."

foreign tax credit is claimed and a refund is made, there has been a fluctuation in the exchange rate.[7]

The same general issue has been raised previously in other forums and in each case the result has been the same. The redetermination should be made by subtracting from the original foreign tax credit the dollar value of the refund measured at the prevailing exchange rate on the day the refund is made. *See* S.M. 4747, V–1 C.B. 282 (1926);[8] Rev.Rul. 58–237, 1958–1 Cum. Bul. 534 (1958);[9] Owens, *The Foreign Tax Credit* (1961) § 7/4B (Rev.Rul. 58–237 is theoretically correct). I see no reason to deviate from these previously reached interpretations of § 905(c) and its predecessors, and I decline to do so.[10]

The opinion might end here, but for the rather interesting argument put forth by plaintiff, which ought not to be rejected too easily. Plaintiff concedes that in the ordinary situation the mechanics of redetermination pursuant to Section 905(c) should conform with the Government's interpretation. Plaintiff contends that this is no ordinary situation, however, and that a different result is called for.

As plaintiff views the facts of this case, not one tax was paid, but two—the tax of $269,085.10 based on §§ 106(1)(a) and 106(1)(b) of the Canadian Income Tax Act, and the tax of $707,859.29 based on § 106(1)(d) of the Act.[11] This fact, asserts plaintiff, makes the maximum amount the IRS can reduce ATT's tax credit $707,859.29. Plaintiff reaches this conclusion based primarily on its analysis of Regulation § 1.905–3(a), which ATT argues indicates that the IRS has abandoned its previ-

7. The sequence of events may be summarized as follows:

> 1964 ATT tax return filed—$269,085.10 claimed as foreign tax credit.
> 1966 additional Canadian assessment—$763,272.90 Canadian dollars.
> 1967 ATT pays assessed taxes—valued at $707,859.29.
> 1969 ATT allowed to adjust foreign tax credit —$976,944.39 claimed.
> 1972 Canada refunds 1966 ATT tax payment—ATT receives $763,272.90 Canadian dollars, valued at $777,240.79.
> 1973 IRS redetermines ATT's allowable foreign tax credit—deducts $777,240.79 from $976,944.39.

8. Rev.Rul. 68–674, 1968–2 Cum.Bul. 609 (1968) declared S.M. 4747 "obsolete". In so doing, the IRS stated that the earlier ruling was not "to be determinative with respect to future transactions." The IRS indicated that part of the reason for declaring the listed rulings obsolete was that they "are now covered by statute, regulation, or later Revenue Rulings." 1968–2 Cum.Bul. 609, 613. That is the case here since Rev.Rul. 58–237 covers the same issue as that involved in S.M. 4747, and indeed the later ruling merely adopts the rationale of the earlier. In *Bank of America Nat'l Trust & Savings v. United States*, 459 F.2d 513, n. 14, 198 Ct.Cl. 263 (9th Cir.), *cert. den.*, 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972) it was held that a declaration of obsolescence "does not mean that the conclusion or underlying rationale [of the obsolete ruling] has no current applicability". This court sees the result in S.M. 4747 as only one of several indications that the Government's position is correct.

9. The administrative ruling in S.M. 4747, *supra*, involved a section of the Revenue Act of 1918, 40 Stat. 1057, which is analogous to § 905(c) of the Code. The ruling in Rev.Rul. 58–237, *supra*, involved § 131(c) of the Revenue Act of 1939, 53 Stat. 1, which was the equivalent of § 905(c) in that Act.

10. It should be noted that Congress has successively reenacted without change the foreign tax credit adjustment provisions on which these administrative rulings were made. *Comprehensive Designers International, Ltd. v. Commissioner*, 66 T.C. 348, 355 (Tax Court 1976). This can be taken as concurrence by Congress in the IRS' interpretation, and while not dispositive of the issue here, is a factor to be considered. *Helvering v. Reynolds Co.*, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939).

11. Perhaps all that need be said is that ATT's attempt to break down its payment of 1964 Canadian taxes into two separate sums is at odds with reality. Both the earlier and later tax assessments were made pursuant to Canada's 15 percent non-resident income tax. As such they are certainly fungible. The refund of the 1967 payment should, therefore, be treated no differently than had all of the $976,944.39 paid Canada have been taxed under the same subsection of the Canadian Income Tax Act and $777,240.79 been refunded. Other than the fact that in this case the dollar's value diminished between payment and refund, the situation here is not significantly different from the situations involved in S.M. 4747, *supra*, and Rev.Rul. 58–237, *supra*. Thus, the result should also be no different.

ous interpretation of § 905(c). Reg. § 1.905–3(a) reads:

" . . . [I]n case any tax payment credited is refunded in whole or in part, the taxpayer shall immediately notify the Commissioner. The Commissioner will thereupon redetermine the amount of the tax of such taxpayer for the year or years for which such *incorrect credit* was granted." (Emphasis supplied by ATT)

ATT reads this regulation as "restricting the redetermination to the amount of the United States tax originally saved due to the taxpayer's claim of an *incorrect credit*." Pl's. memorandum, at 8.[12] Since $707,-859.29 (the amount paid Canada by ATT in 1967) was the U.S. tax saved by ATT's claim of an "incorrect credit", argues ATT, that is the largest amount by which the IRS may now reduce its 1964 foreign tax credit.

Plaintiff's argument is seriously flawed, however. Reg. § 1.905–3(a) speaks only of a redetermination, following a refund, of a year in which an incorrect credit was granted. It makes no mention of a limit to this redetermination of U.S. taxes "originally saved," and is silent on the question of the proper minuend from which to subtract the refund. It is, therefore, difficult to see why Reg. § 1.905–3(a) should be taken as any indication whatsoever of a change in the administrative interpretation of § 905(c) of the Code.

While I believe the Government's position to be correct and adopt it, it is not amiss to point out what appears to be a sound policy argument to the contrary. The instant and, I believe, correct interpretation of § 905(c) gives to a U.S. taxpayer who has paid a foreign tax which has been credited against his United States tax no incentive to seek any refund from that country, since what-

ever he receives must be handed over in full to the IRS. The virtue of ATT's proposed reading of § 905(c), on the other hand, is that a U.S. taxpayer would have an incentive to seek refund of a foreign tax since any gain resulting from an exchange rate fluctuation would be taxed only as a capital gain or ordinary income, and the taxpayer would be able to retain some portion of the refund. (In this case ATT would have to pay the U.S. Government only part of the $69,381.50; it could keep the rest). Were this the rule both the Government and the taxpayer would gain. At present however, a taxpayer has no incentive to seek such a refund, absent unusual patriotic impulses, since he stands to gain nothing for his efforts.[13] However, these are policy considerations which are the responsibility of the legislature and not the courts to determine.

I think it is also appropriate to note that a difficult problem is presented where the value of the refund exceeds the value of the original foreign tax credit—*e. g.*, if the fluctuation of exchange rates had been such that ATT's refund had been worth $1,000,-000, while its original credit was only $976,-944.39. There is no provision in the Code by which the Government could require the taxpayer to pay over the surplus, and it is difficult to determine how this money should be treated for tax purposes. *See* Owens, *supra*, ¶ 7/4B at 462, note 64. This problem while a fascinating one, does not arise here, and, therefore, need not be reached to sustain the Government's position.

Since I am bound to read § 905 as written, summary judgment is granted in favor of defendant.

IT IS SO ORDERED.

---

**12.** ATT further claims that the $69,381.50 gain resulting from the fluctuation of the exchange rate should be treated as a foreign currency gain, and treated according to the dictates of the "tax benefit rule", § 111 of the Code. As the court finds the application of § 905(c) proper in this case, though, it is unnecessary to determine whether the analogy to a foreign currency gain is apt, since § 111 governs the treatment of a refund only to the extent that it is not covered by § 905(c).

**13.** Of course even under ATT's proffered interpretation of § 905(c) a taxpayer would have an incentive to seek a refund of a foreign tax paid only when he could expect that the refund, by virtue of a fluctuation in the exchange rate, would be greater than the amount originally paid. How often this would occur, this court does not know.